SIMONS, Respondent, v. WITTMANN, Appellant.

St. Louis Court of Appeals, June 1, 1905.

1. **BUILDING CONTRACT: Breach by Contractor: Measure of Damages.** Where a contractor entered into a contract for the erection of a building, but abandoned his contract without having performed any part of it, in an action for the breach by the other party for whom the building was to be erected, the measure of damages, if the contractor has been paid in advance for the building, is the value of the building when completed in accordance with the contract.

2. ———: ———: ———. But if the contractor has not been paid in advance, the measure of recovery is the difference between the price at which the contractor agreed to erect the building and the reasonable cost to the employer in erecting the building according to the contract requirements.

3. ——: ——: ——: **Cost to Complete Contract.** The sum actually expended in completing the work according to contract, in the absence of fraud, recklessness or extravagance, is prima facie evidence of the value.

4. ——: ——. When a contractor under a contract to erect a building abandons his contract without performing any part of it, the employer may recover in an action against the contractor, the difference between what the building would cost him and the contract price, without completing the contract or incurring any expense, by showing what it would reasonably cost to complete such contract.

5. **PLEADING: Petition: Surplusage.** A petition will be held sufficient which states facts necessary to entitle the plaintiff to recover on a proper measure of damages, although it recites unnecessary details and irrelevant matter to show the method by which the plaintiff arrived at his conclusion as to the proper amount due.

6. **BUILDING CONTRACT: Husband and Wife: Owner.** Where one entered into a contract with a contractor whereby the latter was to erect a house for the former, he may recover against the contractor for failing to perform any part of his contract, although the land upon which the building was to be erected belonged to the employer's wife.

7. ——: ——: **Suit by Agent.** Where the husband entered into a contract with a contractor for the erection of a house upon his wife's land and the wife participated in the conversations about the building, and gave orders and directions about the plans and specifications, and where the contract was signed by the husband in her presence, the husband in such case was the agent and trustee of the wife and could sue on the contract in his own name.

8. ——: ——: ——: **Trustee of an Express Trust.** In such case, under section 541, Revised Statutes of 1899, the husband could sue in his own name for the benefit of his wife, as the trustee of an express trust.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

W. H. and *Davis Biggs* for appellant.

(1) The court erred in admitting proof of the reasonable cost of the buildings, for the reason (1) that the averments of the petition will not admit of such proof and the appellant was not advised of such an issue; and (2) for the reason that the difference between the contract price and the reasonable cost of said buildings is not the proper measure of damages. Real Estate Co. v. McDonald, 140 Mo. 605, 41 S. W. 913. (2) The rules for the assessment of damages being based on the principle of compensation, are closely analogous to those which apply to executory contracts for the sale of personal property. If there is a total breach by the contractor, only nominal damages can be recovered where the thing to be done or produced would be of no value to the employer, or if damage is merely possible or conjectural. Express Co. v. Egbert, 36 Pa. 360; Petrie v. Lane, 67 Mich. 454; Patrick v. Smelting Co., 20 Colo. 268; Fuel Co. v. Plumb, 182 Pa. 463; Brighton v. Anston, 19 Ont. App. 305; Carroll v. Cane, 27 Wash. 402. (3) A general statement of the rule which applies as between a contractee and a contractor, on a breach by the latter, is that the former is entitled to such damages as will be equivalent to the benefit which he would derive from having a full performance of the contract. Where the breach consists in a failure to erect a building as agreed, the measure of damage is the additional value which would have accrued to the land. Milling Co. v. Mfg. Co., 81 Fed. Rep. 261; Lloyd on Building, p. 113, par. 68; Railroad v. Gilmer, 85 Ala. 422; Railroad v. Sumner, 106 Ind. 55; Watterson v. Railroad, 74 Pa. St. 208; Railroad v. Molloy, 64 Tex. 607.

*Edward N. Robinson* for respondent.

(1)   The measure of damages in an action for direct damages on account of defendant's failure to perform his contract is the sum which it would reasonably take to make the work conform with the requirements of the contract.   Fletcher v. Mfg. Co., 35 Mo. App. 321; Spink v. Mueller, 77 Mo. App. 85; Haysler v. Owens, 61 Mo. 270; Fairbanks v. De Lissa, 36 Mo. App. 711.   And this is true whether or not plaintiff has expended said sum.   Wright v. Sanderson & Sims, 20 Mo. App. 540. (2)   We contend that plaintiff has the right to maintain this action under the following authorities: Snider v. Express Co., 77 Mo. 523; Rogers v. Gosnell, 51 Mo. 466; Nicolay v. Fritschle, 40 Mo. 67; Chouteau v. Broughton, 100 Mo. 411, 13 S. W. 877; Harrigan v. Welsch, 49 App. 496.

## STATEMENT.

The suit is for damages alleged to have accrued to plaintiff by reason of defendant's breach of a building contract.

On November 17, 1902, defendant, a contractor and builder, entered into a written contract with the plaintiff whereby he agreed for a consideration of $3,300, to be paid as the work progressed on the certificate of the supervising architect, to furnish all materials and labor, and to erect and complete for plaintiff, in good workmanlike manner as therein provided, four one and one-half story cottages on a certain lot of ground situated on the north side of Hoffmeister avenue near Broadway in St. Louis county, in accordance with plans and specifications therein provided for.   The buildings were to be completed and delivered to plaintiff by March 1, 1903.   The petition alleges a breach of this contract in that defendant wholly failed and refused to perform any part thereof and avers, substantially, that defendant's

refusal to erect said cottages for the price therein agreed upon, entailed great loss upon plaintiff, that plaintiff had given public notice and had received bids for the construction of said cottages and the lowest bid submitted thereon amounted to $3,860, which sum is the lowest amount at which plaintiff could procure the erection of such cottages; that defendant's refusal to erect such cottages in accordance with his contract entailed a loss of $560 upon plaintiff for which sum he asks judgment.

The case was tried before the judge without the intervention of a jury. No instructions were asked or given. There is but slight disagreement as to the facts. The evidence discloses that defendant was the lowest of a number of bidders for the contract which was awarded to him, thereupon it was reduced to writing and executed by the parties; that in accordance with its provisions, he was also to execute a certain bond but failed to do so. This suit is on the contract and not on the bond. Within a day or two after executing the contract, defendant notified plaintiff that he had learned that plaintiff's wife and not the plaintiff was the owner of the lot of ground on which the cottages were to be erected; and he therefore refused to make the bond or have anything further to do with the contract; that he would not erect the buildings as he would be unable to run a mechanic's lien on the property to secure his pay in event it became necessary to do so, as plaintiff, with whom he had contracted, did not own the land upon which the buildings were to be erected. Thereupon it was proposed to defendant that plaintiff's wife would sign the contract, and plaintiff's wife offered to sign said contract, thus obviating defendant's objection thereto, but defendant remained obstinate and declined to do any act under the contract. It was also shown that at the time he entered into and executed the contract sued on, bids were opened at plaintiff's residence, plaintiff and his wife, who owned the land, the defendant and the architect all being present; that plaintiff's wife parti-

cipated in the conversation and the negotiations there being had pertaining thereto, in pointing out certain changes in the plans and specifications which she desired, etc., and that the result of this meeting and conversation was the contract between plaintiff and the defendant in the presence of the wife. It was further shown in evidence that the time for the completion of the buildings having lapsed, the defendant still refused to perform any part of said contract; that the plaintiff did not erect the buildings nor had he as yet contracted with any person to do so for him. In the absence of proof showing the buildings to have been erected by plaintiff and their reasonable cost, the court permitted plaintiff to prove that the reasonable cost of erecting the four cottages in accordance with the contract within the time provided for and their reasonable value when completed in accordance with the contract, would be $3, 600, or $300 more than the price at which the defendant agreed by the contract to erect them. Upon this state of facts, the court found the issues for the plaintiff and assessed his damages at $300, the difference between the price agreed upon in the contract and the reasonable value of such buildings provided they were erected in accordance with the contract.

The defendant appeals to this court. The errors relied upon for reversal are that the court erred in measuring the damages. He contends that the true measure of damages in the case was the difference in the value of the real estate without the buildings and the value thereof with the buildings erected thereon, and further, that the allegations of the petition would not permit proof of the reasonable cost or value of the buildings, and further, that as plaintiff's wife owned the land upon which the buildings were to be erected, plaintiff had no right to maintain this suit. The several assignments will be noticed in the opinion.

NORTONI, J. (after stating the facts).—It is argued by appellant and we are cited to Lloyd on Building (2 Ed.), sec. 68, where the learned author says: "Where a breach consists in a failure to erect a building as agreed, the measure is the additional value which would have accrued to the land." We have taken pains to examine closely all of the cases cited by the author in support of the text above stated and find that many of those cases were controversies between a landowner and a railroad company arising by virtue of an obligation on the part of a railroad to maintain a depot on or at the plaintiff's premises. In some of those cases, plaintiff had conveyed to the railroad a right of way and depot grounds in consideration of its erecting and maintaining a depot thereat and in others, the railroad had sold plaintiff grounds for hotel purposes, agreeing to maintain a depot adjacent thereto. Upon these facts, the courts hold the covenant as running with the land, and upon suits for a breach of the covenant in failing to maintain, or in removing the depots provided for, have universally held that inasmuch as the maintaining of such depots in connection with the railroad would necessarily enhance the value of the lands, and that this was an element in contemplation of the parties when the contract was made, that the true measure of damages in such case would be the difference in value of the land with the depot standing as provided by the contract and with the depot removed therefrom; or in other words, as plaintiff had parted with the right of way and depot grounds in consideration that a depot was to be established, which would enhance the value of their remaining lands, that the measure of their recovery should be such increased value occasioned by the location of the depot thereupon. [Mobile, etc., Ry. Co. v. Gilmer, 85 Ala. 422; Louisville, etc., Ry. Co. v. Sumner, 106 Ind. 55; Watterson v. Ry Co., 74 Pa. 208; Houston, etc., Ry. Co. v. Molloy, 64 Tex. 607.] No case can be found by us in the books where, for a breach of a builder's con-

tract, as in this case, it was held that the measure of recovery was the difference in the value of the real estate with and without the contemplated building, and we have been unable to find a Missouri case where the suit was for a total failure to perform a building contract. There are numerous well-considered authorities, however, from other jurisdictions which are in point and have materially aided us in arriving at our conclusions.

We cannot agree with appellant's contention that the measure of damages in this case is the difference between the value of the land without the buildings and the value thereof with the buildings erected thereon in accordance with the contract. If this were the measure of damages, it might be that one owning land would contract for the erection of a building much desired by the owner yet of such a character as not to enhance the value of the land and, in fact, depreciate the market value thereof. Upon a breach, the contractor could confess his fault, defend against and defeat a recovery upon the ground that the value of the real estate would not be enhanced by the erection of the buildings. Therefore, it has been well said that: "A man may do what he will with his own, having due regard to the rights of others, and if he chooses to erect a monument to his caprice or folly on his premises, and employs and pays another to do it, it does not lie with the defendant who has been so employed and paid for building it to say that his own performance would not be beneficial to plaintiff." [Chamberlain v. Parker, 45 N. Y. 569; 3 Sutherland on Dam. (3 Ed.), 697.]

The case of Real Estate Co. v. MacDonald, 140 Mo. 605, much relied upon by appellant in this behalf, is not in point here. In that case defendant had purchased from plaintiff certain grounds partially on credit, giving a deed of trust thereon and a certain bond for $35,000, which bond obligated defendants to erect buildings of the value of $35,000 thereon. One of the conditions of the sale on the partial credit extended was that

the defendant should build ten buildings on said ground at a cost of $35,000 before a given time, which, of course, would render the security for the debt secured by the deed of trust much more valuable. The defendant made default and failed to erect the buildings as required by his bond. In a suit by plaintiff on said bond, the Supreme Court held that the bond stood as a security for the difference between the land without and the land with the buildings upon it; that it was necessary for plaintiff to show the value of the land without the buildings and the value of the land with the buildings in order to arrive at the true measure of recovery. The decision was certainly a correct exposition of the law of that case.

It is to be observed that the court passed upon that case, being properly guided by the matters within the contemplation of the parties at the time the bond was executed, that is, the enhancing of the value of the security for the deferred payments of the purchase price which was secured by the deed of trust mentioned, and that case is unlike the case at bar. This measure, applied to the case in decision here, would be violative of that general rule and fundamental principle of the law of damages, resting upon the idea of compensation for the wrong done which seeks to compensate for the thing contracted for. [8 Am. & Eng. Ency. Law (2 Ed.), 635; The Pittsburg Coal Co. v. Shaeffer, 59 Pa. St. 365; Amer. Surety Co. v. Woods, 105 Fed. 741; 3 Sutherland on Dam. (3 Ed.), 697.]

We find that when a contractor, as in this case, has, first, wholly failed to perform any part of his contract; or second, when he has partially completed and abandoned the building; or third, when he has substantially completed the building, not in accordance with the contract, the same being insufficient and defective in workmanship, skill or material furnished, when measured by the requirements of the contract, and there being no waiver on the part of the employer, that in either of

such cases, the owner or employer had the right to erect the building which had been untouched by the defaulting contractor in the first instance or continue to completion the partially completed and unfinished building in the second instance, or complete and make good the substantially completed building in the third instance, according to the requirements of the contract, and upon his having erected such untouched building, or completed such partially completed and unfinished building, or made good such substantially and defectively completed building, he is entitled to recover against the defaulting contractor on account of such breach.

(a) The true measure of which recovery in the first instance, if the contractor has been paid in advance for the building, is the value of the building when completed in accordance with the contract.

(b) If he has not been paid in advance for such building, the measure of recovery is the difference in the price at which the contractor agreed to erect the building and the reasonable cost to or the reasonable expenditure of the owner or employer in erecting the building in accordance with the contract requirements.

This is true because, by virtue of the contract, the employer is entitled to a building at the hands of the contractor for the price therein agreed upon and upon the contractor defaulting and refusing, doing no act toward performance, the owner has the undoubted right to erect such a building and if it reasonably costs him more than the price at which the defaulting contractor was to erect it, he should, in justice, be reimbursed by the contractor for the additional expenditures which the defaulting contractor, by his wrongful act, has entailed upon him. [Laraway v. Perkins, 10 N. Y. 371; Chamberlain v. Parker, 45 N. Y. 569; Taylor v. Ry. Co., 56 Calif. 317; Cincinnati, etc., Ry. Co. v. Carthage, 36 Ohio St. 631; Morrell v. Ry. Co., 15 Daly (N. Y.) 127; Mayor, etc., N. Y. v. Ry. Co., 102 N. Y. 572; Gray et al. v. Reed et al., 65 Vt. 178; City of Sherman v. Connor, 88 Tex.

35; Neale v. Smith, 61 Ark. 565; Baker Transfer Co. v. Merchants Ref. etc. Co., 83 N. Y. 391; Morrell v. Irving Fire Ins. Co., 33 N. Y. 429; McCormack v. Lynch, 69 Mo. App. 524-529; 3 Sutherland, Dam. (3 Ed.), secs. 997-999.]

(c) The measure of recovery in the second instance for completing the unfinished building and in the third instance, for bringing up to the contract requirements the substantially yet defectively completed building, is the difference in the value of the partially completed building when abandoned by the contractor, or the substantially and yet defectively completed building and the reasonable cost or value of the building completed in accordance with the requirements of the contract. [Haysler v. Owen, 61 Mo. 270-274; Hirt v. Hahn, 61 Mo. 496-498; Spink v. Mueller, 77 Mo. App. 85-93; McCormack v. Lynch, 69 Mo. App. 524-529; Fairbanks, etc., Co. v. DeLissa, 46 Mo. App. 711-722; Fletcher v. Wilburn Mfg. Co., 35 Mo. App. 321-328; Wright v. Sanderson, 20 Mo. App. 534-541; Springfield Milling Co. v. Barnard, etc., Mfg. Co., 81 Fed. 261-266; Sunman v. Clark, 120 Ind. 142; Pittsburg Coal Co. v. Shaeffer, 59 Pa. St. 356; Carroll et al. v. Caine, 27 Wash. 402; Village of Brighton v. Auston, 19 Ont. Rep. 305; 3 Sutherland, Dam. (3 Ed.), sec. 299; 1 Sutherland on Dam. (3 Ed.), sec. 91.]

It will be observed that in stating the above rules, we have said the owner or employer was entitled to recover the reasonable cost of erecting the building or completing the building in accordance with the contract. There are authorities holding to the broad statement that a recovery can be had by the employer or owner for the actual cost or expenditure of completing the contract. We are inclined to the opinion that the better rule, that borne out by the most carefully considered cases and the most eminent authorities, is as stated in 1 Sutherland on Damages (3 Ed.), sec. 91: "A party to a contract which has been broken by the other, has a

right to fulfill it for himself as nearly as may be, but he must not do this unreasonably as regards the other party nor extravagantly; but he may expend such sum as will give him what he was entitled to under his contract though that be more than the price for which the contractor was to have done the work. . . . A person has no right to put others to an expense of such a nature as he would not, as a reasonable man, incur on his own account." The New York Court in Mayor, etc., New York v Ry. Co., 102 N. Y. 563, at page 577, having this identical question in decision, says: "But where a covenantee has made repairs which the covenantor was bound, but has neglected to make, and has proceeded in the usual way and no fraud is shown, nor any facts to impeach the reasonableness of the account, the sum actually expended in the work, is, we think, prima facie the sum which he is entitled to recover. In the absence of proof neither fraud, recklessness nor extravagance will be presumed, and this measure of recovery presumtively gives the covenantor actual indemnity only." We think this is the sound doctrine on the subject. It seems to be sound in law and in accordance with both reason and justice.

The learned trial judge did not err in permitting respondent to prove the reasonable cost of erecting the building provided for under the contract.

It is said that the damages for breach of contract, admeasured by the rules above stated, are obviously just and proper and that such rules furnish a proper standard by which to measure the employer's damages because the building, completed in accordance with the contract, is exactly what the employer is entitled to and thus the principle of compensation is met and satisfied and by the process of computing damages therein provided for, the contractor obtains just what his untouched work or unfinished work or his defective work is worth and he cannot complain. 3 Sutherland on Damages (3 Ed.), sec. 699.

Simons v. Wittmann.

It is next argued by appellant that damages in cases of this class are allowed upon the principle of compensation when allowed at all, and that unless there be some expenditure or outlay on the part of the complaining party, there can be no recovery upon the principle of compensation; that inasmuch as respondent failed to take up the work after the default of the contractor and erect the several buildings mentioned, no recovery can be had therein other than nominal damages for the wrongful breach, when the evidence shows that the thing to be done or produced would be of no value to the employer or if the damage is merely possible or conjectural. This contention is no doubt largely predicated upon appellant's main proposition that the damages accrued, if at all, to the real estate, and the plaintiff, not owning the real estate, was therefore not damaged and his wife, who owned the real estate, is not shown to have been damaged. In the total absence of evidence showing the difference in the value of the real estate with and without the buildings, what has been said heretofore is sufficient answer to so much of this argument as is predicated upon that idea. We will say, however, that while the damages are allowed upon the principle of compensation, as argued by appellant, the law allows compensation upon the theory that those matters which were within the contemplation of the parties at the time of making the contract and which the contract reasonably required to be performed, are to be compensated for in case of a breach. In this case, it was contemplated that for the sum of $3,300 respondent was to have from appellant, four cottages, which were in truth, of the value of $3,600 and in default to furnish the cottages, compensation must be made to the extent of the deficiency. The evidence shows the thing he contracted for to be of $300 greater value than the contract price, and therefore respondent is entitled to compensation from appellant

113 app—24

for this amount, of which he was deprived by appellant's breach.

As to the contention that recovery cannot be had until the employer has erected the building and ascertained definitely the cost thereof, it is laid down as a rule in 3 Sutherland on Damages (3 Ed.), sec 699, that: "In such cases the employer is generally entitled to measure his damages by what the necessary expense would be to procure to be done the work which the contractor neglected to do, whether it is done or not; for the same reason that a vendee in an executory contract for the sale of goods need not, in fact, purchase the goods he was entitled to receive from the vendor in order to have his damages computed on the basis of what they would cost him at the time of the breach." In American Surety Co. v. Woods, 105 Fed. l. c. 746, the court said: "Where the employee or contractor without legal cause abandons the work, unfinished, the right of the employer to sue for the breach of the contract is not dependent on his completing the abandoned work. He may sue at once and recover of the employee or contractor such damages as under legal rules, he can show he has sustained."

It will be observed that the evidence in this case on the reasonable cost of erecting the buildings was as to the reasonable cost at the time of the contract and the case was not rendered one of that uncertain class by indefinite testimony as to what might be the cost of the building some time in the future, which would necessarily depend upon the fluctuating prices of labor and materials and therefore render the ascertainments uncertain, indefinite and conjectural to a great extent. The authorities are abundant sustaining the right of the employer to sue for his damages before erecting the buildings, as is shown by the following cases: King v. Nichols, 53 Minn. 453; Cincinnati, etc., Ry. Co. v. Carthage, 36 Ohio St. 631; Taylor v. Ry., 56 Calif. 317; Laraway v. Perkins, 10 N. Y. 317; Hawley v. Florsheim, 44 Ill. App.

320; American Surety Co. v. Woods, 105 Fed. 741-746; 3 Sutherland on Damages (3 Ed.), sec. 699.

The petition, after prefatory allegations alleging the contract, etc., alleges the breach thereon as follows:

"Plaintiff states that defendant has failed and refused to comply with his said contract to erect said cottages for said sum of $3,300 and has renounced his said contract and has informed plaintiff that he will not comply with same, or with any part thereof. Plaintiff states that defendant's failure to comply with his said contract to erect cottages for said sum entails a great loss upon plaintiff; that he has given public notice and has received bids for said construction of said cottages, and that the lowest bid submitted amounts to $3,860, which sum is the least at which the erection of said cottages can be procured; that defendant's failure to comply with his contract entails a loss upon this plaintiff of five hundred and sixty dollars, for which sum plaintiff prays judgment and for costs."

Under this allegation, the trial court permitted the respondent to prove what would be the reasonable cost of erecting the buildings and that such cost would be actually $300 more than the price at which plaintiff had contracted to erect them and thus arrived at the measure of damages. Appellant contends that inasmuch as there was no allegation of the reasonable cost of the buildings in the petition, that the court erred in admitting such testimony. Under our code, a plain and concise statement of the facts constituting plaintiff's cause of action, provided, of course, the relief prayed thereon is in accordance with the rules of the law, is all that is required of the pleader. The petition states the facts constituting the cause of action in a plain and concise manner and then goes somewhat into detail and shows that respondent took some pains by advertising, etc., in order to discover just how much it would cost him to have erected the buildings for which he had contracted and just what was the value of the buildings he was entitled

to receive from defendant, and thereby discover the true extent of his damages by reason of the appellant's default, and by this process, from the information contained in the bids which came as a result of his advertising, he arrived at the conclusion that he was entitled to four cottages for $3,300 at the hands of the defendant which were of the value of $3,860, and that defendant, in failing to furnish him $3,860 in value for the agreed $3,300, had entailed a loss of $560 upon him. This is the story he pleads in the petition. The purport of the whole matter is that the prayer is a prayer for damages under the proper rule of law in such case, the measure being the difference between the contract price and the reasonable cost of the completed buildings. This is precisely what plaintiff prays in the petition. Plaintiff not having erected the buildings, could not plead their actual cost nor could he plead their reasonable cost or value except from estimates, which he did, and the $560 damages asked is the difference between the contract price and the actual value of the completed buildings, as he believed from the bids and estimates he had received. To be sure, it was unnecessary for him to plead the matter of advertisement and having received bids and to disclose by his petition how he became possessed of the information to the extent of his damage, yet the petition is not bad because he did so plead, as the proper measure of damages is invoked thereby. The learned trial judge did not err in holding the allegation of the petition was broad enough to receive proof of the reasonable cost of erecting such buildings. Appellant says that he "could perhaps have brought a dozen witnesses to show that the contract price would be the reasonable cost of the buildings," had he known the court would permit evidence of the reasonable cost under the allegation. If appellant could have brought a dozen witnesses, it certainly was his duty to do so for it was the law and not the petition that made it proper for the court to permit the introduction of evidence as to the

reasonable cost of the buildings. This certainly is not the fault of the allegation. The law fixes the reasonable cost as the extreme by which the damage was to be measured. The allegation of the petition could certainly not mislead appellant as to the law of the case. It would be unnecessary to notice the objection further than to say that it appears from the record that appellant's counsel on the trial examined witnesses on the same theory, that is, upon the reasonable cost of erecting such buildings and participated in that which he now complains of as error. It is well settled that where the complaining party participates in the alleged error in the court below, he cannot be heard to complain thereon on appeal. [Johnson v. Hutchinson, 81 Mo. App. 299; Phelps v. City of Salisbury, 161 Mo. 1, 61 S. W. 582; Whitmore v. Sup. Lodge K. & L. of H., 100 Mo. 36, 13 S. W. 495.]

It is contended by appellant that inasmuch as the wife of the respondent owned the lands upon which the buildings contracted for were to be erected, therefore any damages resulting from a breach of such contract would be damages accrued to the wife, the real owner, and not to this respondent, therefore respondent cannot recover. This contention is based largely upon appellant's other contention pertaining to the measure of damages, that the damages resulting from the failure to erect the buildings was damage to the realty and that the true measure thereof was the difference in value of such real estate with and without the buildings thereon. This proposition having been settled against him, we take it that the last contention now under consideration would not be seriously insisted upon. The contract sued upon is a personal obligation between appellant and respondent in this case. Respondent had the right, if he saw fit, to contract for and have erected on the lands of his wife, the several houses mentioned, and donate them to his wife. The relationship of husband and wife is a sufficient consideration therefor and besides, he would necessarily receive the indirect benefit therefrom by vir-

tue of the benefit to his wife and no good reason can be seen why he would not be permitted to contract for the construction of buildings upon her property at his cost and recover for a breach of such contract. This was the view expressed by the learned trial court in an able written opinion which is printed in the record, and we think it is sound. But, aside from this, the testimony shows that at the time the contract was entered into the wife was present in person, participated in the conversation about the buildings and gave some orders and directions about the plans and specifications thereof; that the contract was signed and closed by her husband in her presence with her full knowledge and consent. Certainly under these circumstances, appellant could not be aggrieved so far as his rights are concerned, as the law clearly would declare the husband the agent of the wife therein, and if the contract was made for her benefit, as contended by appellant, it is well settled that the law will declare the husband in such case the trustee of the wife, and it is clearly competent for the agent or trustee with whom the contract is made to sue in his own name or for his undisclosed principal, with whom, in point of law, the contract was made. [Snider v. Express Co., 77 Mo. 352; Rodgers v. Gosnell, 51 Mo. 466; Nicolay v. Fritchle, 40 Mo. 67; Chouteau v. Boughton, 100 Mo. 416, 13 S. W. 877; Harrigan v. Welch, 49 Mo. App. 496.] And under the following statute, respondent can maintain this suit:

"An executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue in his own name without joining with him the person for whose benefit the suit is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another." [R. S. 1899, sec. 541.]

If appellant's contention that the wife is the real party in interest under this contract, is correct, then un-

der the very terms of the statute, the circumstances of this case endow respondent with all the attributes essential to maintain this suit in his own name, the law declaring him a trustee for the benefit of his wife. Aside from this statute, however, it is familiar law in this State that the agent may enter into a contract representing an undisclosed principal and maintain a suit in his own name in enforcing such contract, it being wholly immaterial whether the principal is known or unknown during the transaction or whether the party supposed he was dealing with the agent personally and on his own behalf. [Randolph v. Wheeler, 182 Mo. 145, 81 S. W. 419; Kelley v. Thuey, 143 Mo. 423, 45 S. W. 300; Darnell v. Lafferty, 113 Mo. App. 282. There is no merit in this contention of the respondent and it is therefore overruled.

The case was well and carefully tried. Finding no error in the record, the judgment is affirmed. All concur.